UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-61 |
| LISA CRINEL, ET AL. | SECTION: "E" (5) |

### ORDER AND REASONS

This is a criminal action involving twenty-one defendants. Count 1 charges eighteen defendants with conspiracy to commit healthcare fraud; Count 2 charges eleven defendants with conspiracy to pay and receive illegal healthcare kickbacks; Counts 3 through 22 charge various defendants with substantive acts of healthcare fraud; Count 23 charges three defendants with conspiracy to defraud the Gulf Coast Claims Facility through wire communications; and Counts 24 through 26 charge one defendant with substantive acts of wire fraud.

Four defendants have moved to sever Counts 23 through 26 (collectively the "BP Counts") from the indictment.[1] Several co-defendants have joined the motions.[2] The questions presented are whether joinder is proper under Rule 8, and, if so, whether severance is nonetheless warranted under Rule 14. For the following reasons, the Court finds the BP Counts were misjoined.[3] The motions to sever are GRANTED, and the BP Counts are hereby SEVERED from the indictment.

---

[1] Lisa Crinel (R. Doc. 27), Henry Evans, Jr. (R. Doc. 207), Verinese Sutton (R. Doc. 230), and Sheila Hopkins (R. Doc. 231) have filed substantive motions to sever.
[2] Caren Battaglia (R. Doc. 233) adopted the motions of Evans and Hopkins; Suprenia Washington (R. Doc. 242) adopted the motions of Crinel and Evans; Michael Jones (R. Doc. 243) adopted the motions of Evans and Hopkins; and Shelton Barnes (R. Doc. 259) adopted the motions of Crinel and Evans.
[3] Therefore, the Court need not address Defendants' Rule 14 arguments.

1

## BACKGROUND[4]

On March 12, 2015, a federal grand jury in the Eastern of District of Louisiana issued a twenty-six count indictment. Count 1 charges an elaborate conspiracy to commit healthcare fraud involving PCAH, Inc. a/k/a Priority Care at Home d/b/a Abide Home Care Services, Inc. ("Abide") and its associates. Abide provides home healthcare to Medicare beneficiaries. The indictment alleges that from on or about November 1, 2008 continuing to the date of indictment, the defendants conspired to obtain reimbursement payments from Medicare by submitting fraudulent claims for home healthcare services. The conspiracy involves several moving parts. Eleshia Williams ("Williams") recruited Medicare beneficiaries for the scheme, for which she received kickbacks from Lisa Crinel ("Crinel"), the owner and director of Abide, and Wilneisha Jakes ("Jakes"), the Chief Administrative Officer at Abide. Once recruited, Sheila Mathieu ("Mathieu"), Suprenia Washington ("Washington"), Erica Edwards ("Edwards"), Zellisha Dejean ("Dejean"), Sheila Hopkins ("Hopkins"), and other registered nurses ("RNs") employed by Abide would visit the homes of the patients to complete an "OASIS" assessment.[5] The RNs would "routinely and fraudulently" misdiagnose the patients in order to inflate the reimbursement rates paid by Medicare to Abide. The fraudulent OASIS assessments were then forwarded to Abide case managers to create a Plan of Care ("POC"). Abide's "House Doctors"—including Sheila Barnes ("Barnes"), Henry Evans ("Evans"), Threasa Adderley ("Adderley"), and Michael Jones ("Jones")—falsely certified the POCs "regardless of a beneficiary's needs,

---

[4] The following background summarizes the indictment and does not constitute findings of fact.
[5] An OASIS assessment determines the necessary level of care required for the beneficiary and the reimbursement rate for claims made by Abide.

2

homebound status, or diagnoses."[6]  To support the continued billing of these beneficiaries, Evelyn Odoms ("Odoms"), Cary Payton ("Payton"), Caren Battaglia ("Battaglia"), and other Licensed Practical Nurses ("LPNs") employed by Abide falsely documented home visits and the provision of home healthcare services.  As a result of the conspiracy alleged in Count 1, Medicare provided Abide over $30 million in reimbursement payments.

Count 2 alleges a conspiracy to pay and receive illegal healthcare kickbacks.  The allegations of Count 2 largely summarize and build upon the allegations in Count 1.  Specifically, Count 2 details how Abide, Jakes, and Crinel distributed kickbacks from reimbursement payments to the House Doctors, RNs, LPNs, and other Abide employees.  Count 2 also describes kickback payments and bribes to Verinese Sutton ("Sutton"), who operated two unlicensed group homes for Medicare beneficiaries with psychiatric diagnoses.

Counts 3 through 22 allege substantive acts of healthcare fraud related to six individual Medicare beneficiaries.

Count 23 alleges a conspiracy to defraud the Gulf Coast Claims Facility ("GCCF") involving Crinel and two other Abide employees, Clara Aitch ("Aitch") and Wendy Ervin ("Ervin").  On or about November 18, 2010, Crinel prepared letters which falsely certified that Aitch and Erwin had been employed full time with LACE—a reception hall at Jackson State University owned and operated by Crinel.  The letters further certified that, as a result of the BP oil spill in April 2010, Aitch and Ervin suffered a drastic reduction in their employment hours with LACE.  The letters were emailed to an

---

[6] In return, Barnes, Evans, and Adderley received monthly payments from Abide falsely characterized as medical consultant or director fees.  Jones received his fee through his wife, Paula Jones.  Abide hired Paula Jones as its patient biller and provided her an inflated salary.

3

accountant and then forwarded to the GCCF.  Ervin and Aitch each received two separate checks from the GCCF.

Counts 24 through 26 charge Crinel with substantive acts of wire fraud related to the conspiracy charged in Count 23.

## DISCUSSION

Defendants have moved to sever the BP Counts.  When reviewing a motion to sever, the preliminary inquiry is whether joinder was proper as a matter of law under Federal Rule of Criminal Procedure 8.[7]  Where, as here, an indictment charges multiple defendants and multiple counts, Rule 8(b) governs the propriety of joinder.[8]  This rule allows joinder of defendants in the same indictment if they are alleged to have participated "in the same series of acts or transactions . . . constituting an offense or offenses."[9]  Whether the counts charged fulfill this "same series" requirement is determined by the facts in the indictment, which are accepted as true absent arguments of prosecutorial misconduct.[10]  There is no requirement that each defendant have participated in the same act(s),[11] or that each defendant be charged in the same count(s).[12] Even separate conspiracies with different memberships are properly joined if they are part of the same series of acts or transactions.[13]  Because Rule 8(b) is broadly construed in favor of joinder,[14] the question presented is whether the indictment charges "a series of acts unified by some substantial identity of facts or participants."[15]

---

[7] *See United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993).
[8] *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1998)
[9] Fed. R. Crim. P. 8(b).
[10] *See United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012); *United States v. Faulkner*, 17 F.3d 745, 758 (5th Cir. 1994).  Defendants make no such arguments in their motions to sever.
[11] *McRae*, 702 F.3d at 820.
[12] Fed. R. Crim. P. 8(b).
[13] *See United States v. Harrelson*, 754 F.2d 1153, 1176—77 (5th Cir. 1985).
[14] *United States v. Piaget*, 915 F.2d 138, 142 (5th Cir. 1990).
[15] *See McRae*, 702 F.3d at 821 (quoting *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. 1981)).

There is no substantial identity of facts between the BP Counts and the other counts in the indictment. In fact, there is almost no identity at all. Count 1 alleges a broad conspiracy to commit healthcare fraud spanning over five years that involves Abide employees and associates. Counts 2 and 3 build on these allegations. The BP Counts, on the other hand, have nothing to do with the provision of healthcare services or the submission of false claims to Medicare. Rather, the BP counts allege an isolated, unrelated one-month conspiracy to defraud the GCCF and three related acts of wire fraud. Thus, this is not a case where "the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense,"[16] or where severance would result in "two trials with substantially identical evidence."[17] Simply put, "[t]here [is] no fact that could be proved to establish guilt under [the BP Counts] which would also establish any of the other offenses."[18]

Nor does the indictment allege a substantial identity of participants. There are only three named defendants in Count 23: Crinel, Aitch, and Ervin. Aitch and Ervin are not charged in Counts 1 through 22. In fact, Count 23 is the first time Aitch and Ervin are mentioned *by name* in the indictment. Moreover, while it is true Crinel is charged in each of the BP Counts and in the other counts, "the mere identity of a small number of participants will not justify the joinder of multiple offenses involving several persons . . . . Otherwise the government could take any two counts, however disconnected, and join them in one trial so long as they involved the same type of crime and some of the same defendants."[19]

---

[16] *See United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974).
[17] *See United States v. Welch*, 656 F.2d 1039, 1052 (5th Cir. 1981).
[18] *See United States v. Lane*, 735 F.2d 799, 804 (5th Cir. 1984), *rev'd in part on other grounds*, 474 U.S. 438 (1986)).
[19] *Id.* (internal citations omitted)..

5

These joinder deficiencies are underscored by the Government's opposition memoranda. Rather than address the deficiencies, the Government studiously avoids them. For example, in opposition to Crinel's motion, the Government cites a series of cases interpreting Rule 8(a).[20] The law is clear, however, that joinder issues regarding multiple defendants are governed by Rule 8(b).[21] When confronted with this blatant error,[22] the Government changed tact and offered a different—yet similarly flawed—argument: "severance at this early pre-trial stage should be denied as premature."[23] In support of this argument, the Government cites a series of cases in which courts exercised their discretion to defer a severance ruling *under Rule 14*, the wrong legal standard in this case. Unlike Rule 14, Rule 8 affords the trial court no discretion to deny or defer severance: if there is misjoinder under Rule 8(b), severance is required as a matter of law.[24] In short, the Government fails to offer a persuasive argument in support of joinder because there is none.

---

[20] *See* R. Doc. 202, p. 5.
[21] *See, e.g.*, *United States v. DeLeon*, 641 F.2d 330, 337 n.4 (5th Cir. 1981) ("[J]oinder of offenses committed by two or more defendants is controlled exclusively by subsection (b) of Rule 8, governing joinder of defendants, and subsection (a), governing joinder of offenses against a single defendant, has no application."); *Kaufman*, 858 F.2d at 1003 ("Since this case involves multiple defendants as well as multiple counts, Rule 8(b), Fed. R. Crim. P., provides the relevant standard."). That Crinel incorrectly cited Rule 8(a) in his motion to sever is no excuse to compound the error.
[22] Evans identified the Government's error in his motion to sever. *See* R. Doc. 207-1, p. 4–7.
[23] R. Doc. 245, p. 2.
[24] *See United States v. Lane*, 474 U.S. 438, 449 n.12 (1986) ("Rule 14's concern is to provide the trial court with some flexibility when a joint trial may appear to risk prejudice to a party . . . . Rule 8(b), however, requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice[.]"); *United States v. McLaurin*, 557 F.2d 1064, 1075 n.10 (5th Cir. 1977) ("A defendant who has been misjoined with others within the meaning of Rule 8(b) is entitled to severance as a matter of law, and the trial court's discretion never enters the picture.").

## CONCLUSION

There is no substantial identity of facts or participants between the BP Counts and the other counts in the indictment. Severance is mandatory under Rule 8(b). The Court will address the effects of severance at the next status conference.

**New Orleans, Louisiana, this 28th day of May, 2015.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**