# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO.  15-61**

**LISA CRINEL, ET AL.**                         **SECTION: "E" (5)**

## ORDER AND REASONS

This is a criminal action charging Abide Home Care Services, Inc. ("Abide")[1] and its associates with a scheme to defraud Medicare and to pay and receive illegal healthcare kickbacks.  Lisa Crinel has moved to suppress evidence seized during the execution of a search warrant at Abide's corporate office.[2]  Ms. Crinel argues the magistrate judge who issued the warrant was not neutral and detached, in violation of the Fourth Amendment.  Ms. Crinel also contends the evidence was seized in violation of her Equal Protection rights.

With respect to the suppression argument, the threshold question is whether Ms. Crinel is entitled to an evidentiary hearing.  If not, the Court can adjudicate the motion now, which entails a two-step process.  First, the Court determines whether the good faith exception to the exclusionary rule applies.  If the exception does not apply, the Court must determine whether a neutral magistrate judge had a substantial basis for concluding that probable cause existed.  With respect to the Equal Protection argument, the Court must determine whether Ms. Crinel has presented sufficient evidence of selective prosecution based on race and gender.

---

[1] According to the indictment, Abide's full name is "PCAH, Inc. a/k/a Priority Care at Home d/b/a Abide Home Care Services, Inc."

[2] R. Doc. 26.

For the following reasons, the Court finds that Ms. Crinel is not entitled to an evidentiary hearing, that the good faith exception to the exclusionary rules applies, and that Ms. Crinel has failed to demonstrate her assets were seized in violation of the Equal Protection Clause.  Ms. Crinel's Motion is DENIED in its entirety.

## BACKGROUND

On March 20, 2014, Magistrate Judge Roby signed a search warrant for Abide's corporate office.  Federal agents executed the search warrant on March 25, 2014 and seized various assets belonging to Ms. Crinel.  At some point while the search was ongoing, Clarence Roby—one of Ms. Crinel's attorneys during the pre-indictment phase of this case—arrived on the scene.  Mr. Roby is Judge's Roby's husband.

On March 12, 2015, a federal grand jury in the Eastern of District of Louisiana returned a twenty-six count indictment.   Count One charges Abide and seventeen co-defendants with an elaborate conspiracy to commit healthcare fraud.  Count Two alleges a conspiracy involving eleven defendants to pay and receive illegal healthcare kickbacks.  The remaining counts allege substantive acts of healthcare fraud related to six Medicare beneficiaries.[3]  Ms. Crinel is a named defendant in all counts.

## LEGAL STANDARD

The Fourth Amendment requires, *inter alia*, that all warrants be issued by a neutral and detached magistrate judge,[4] but does not expressly prohibit the use of evidence obtained in violation of its commands.[5]  This rule—the so-called "exclusionary rule"—was created by the courts.[6]  Its purpose is to deter future Fourth Amendment

---

[3] The Court previously severed Counts 23 through 26.  *See* R. Doc. 263.
[4] *See Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972); *accord United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009).
[5] *Arizona v. Evans*, 514 U.S. 1, 10 (1995).
[6] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

violations, rather than redress the injury occasioned by an unconstitutional search or seizure.[7]   Accordingly, "where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'"[8]

## DISCUSSION

Ms. Crinel's motion seeks two separate remedies: the suppression of evidence and an order requiring the Government to return that evidence.  These remedies implicate distinct questions of law.  The Court bifurcates its analysis accordingly.

## I.  Whether Suppression of Evidence is Warranted

Ms. Crinel contends she is entitled to an evidentiary hearing before the Court rules on her motion to suppress.  Thus, the threshold issue is whether this motion is ripe for consideration.

### A.  *Evidentiary Hearing*

"Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief."[9] Factual allegations must be "sufficiently definite, specific, detailed, and nonconjectural . . . ."[10]  Thus, "[g]eneral or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice."[11]  The decision to grant an evidentiary hearing is committed to the district court's sound discretion.[12]

The issues on which Ms. Crinel requests an evidentiary hearing are generally divided into two categories.  First, Ms. Crinel seeks to establish what the Government

---

[7] *See United States v Leon*, 468 U.S. 897, 906 (1984).
[8] *Davis v. United States*, 131 S. Ct. 2419, 2426–27 (2011) (alteration in original) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)).
[9] *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).
[10] *Id.* (internal quotation marks omitted).
[11] *Id.*
[12] *See id.*

knew about the existing relationships between her and Mr. Roby at the time of the search warrant. Second, Ms. Crinel seeks to determine whether Judge Roby was neutral and detached when she signed the search warrant.

Regarding the first category—what the Government knew—Ms. Crinel essentially makes three allegations: (1) the Government was aware Ms. Crinel and Mr. Roby served together on the board of directors for a non-profit organization at the time Judge Roby issued the search warrant;[13] (2) the Government became aware during the challenged search that Mr. Roby was Ms. Crinel's attorney;[14] and (3) the Government learned in June 2014, *i.e.*, *after* the search, of an extramarital relationship between Mr. Roby and Ms. Crinel.[15] The first allegation is not in dispute.[16] Moreover, even if the second and third allegations are accepted as true,[17] they would not affect the Court's conclusion that officers acted in good faith, as explained more fully below. In other words, these allegations do not constitute "facts which, if proven, would justify relief."[18] Therefore, an evidentiary hearing is not warranted with respect to this category.

Regarding the second category—whether Judge Roby was neutral and detached— Ms. Crinel insists she is entitled to an evidentiary hearing to determine "the extent of [Judge] Roby's knowledge of the relationships between [Mr. Roby] and [Ms. Crinel] prior to her signing the search and seizure warrants . . . ."[19] It is well established, however, that "[h]earings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations

---

[13] *See, e.g.*, R. Doc. 26-1, p. 8. Both parties refer to Ms. Crinel's and Mr. Roby's common board membership as a "business relationship." The Court disagrees with this characterization.
[14] *See, e.g.*, *id.*; R. Doc. 223 at p. 4.
[15] *See, e.g.*, R. Doc. 26-1, p. 6.
[16] *See* R. Doc. 212, p. 4. Therefore, an evidentiary hearing on this issue is clearly unnecessary.
[17] The Court makes no finding on these allegations.
[18] *See Harrelson*, 705 F.2d at 737.
[19] *See, e.g.*, R. Docs. 26-1, p. 8; R. Doc. 36, p. 6–7.

. . . ."[20]  It is unclear from her memoranda exactly what additional evidence—if any—Ms. Crinel would present or attempt to elicit to establish Judge Roby's knowledge of the relationships between Ms. Crinel and Mr. Roby.  In one memorandum, Ms. Crinel's counsel avers he has heard "unconfirmed statements" that Judge Roby knew of the alleged affair between her husband and Ms. Crinel.[21]  Such conjecture is clearly insufficient to warrant an evidentiary hearing as it does not even rise to the level of a factual allegation.[22]  Similarly, Ms. Crinel speculates that certain emails between Ms. Crinel and Mr. Roby "indicate[] that this type of affair would be difficult to conceal."[23]  Again, this speculation does not constitute an allegation of fact.  Furthermore, the emails cut both ways, as both parties acknowledge they have gone to great lengths to conceal their relationship.  To the extent Ms. Crinel argues a hearing is warranted to determine whether Judge Roby was aware of the common board membership between Ms. Crinel and Mr. Roby,[24] that fact is essentially conceded by the Government and assumed to be true for purposes of this motion.[25]  Therefore, no evidentiary hearing is needed to establish this fact.  Finally, Ms. Crinel argues a hearing is necessary to determine if Judge Roby was aware her husband represented Ms. Crinel at the time she signed the warrants.[26]  Yet Ms. Crinel makes no factual allegation that Judge Roby was aware of the representation.[27]

---

[20] *Harrelson*, 705 F.2d at 738.

[21] *See* R. Doc. 74, p. 5.

[22] *See Harrelson*, 705 F.2d at 737 ("General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice.").

[23] *See* R. Doc. 74, p. 6.

[24] *See* R. Doc. 36, p. 6.

[25] *See* R. Doc. 209-3, ¶4.

[26] *See* R. Doc. 223, p. 9.

[27] The Government avers it did not inform Judge Roby of the attorney-client relationship, because it was not aware of that relationship until some time after the search.

Ms. Crinel's several memoranda demonstrate a fundamental misunderstanding regarding the purpose of an evidentiary hearing. An evidentiary hearing is not a "discovery proceeding" in which the defendant is given free license to fish for evidence.[28] Rather, an evidentiary hearing is "designed for the presentation of evidence in support of factual allegations . . . ."[29] Ms. Crinel has failed to make factual allegations which, if proven, would entitle her to relief. Therefore, she is not entitled to an evidentiary hearing.[30]

B. *Merits*

Having determined an evidentiary hearing is not warranted, the Court now addresses Crinel's suppression argument on the merits. Crinel argues the search and seizure on March 25, 2014 was unlawful, because the warrant was not issued by a neutral and detached magistrate judge. The Government contends Judge Roby was neutral and detached. In the alternative, the Government contends officers executed the warrant in good faith.

The Court reviews a motion to suppress evidence seized pursuant to a warrant in two steps.[31] First, the Court determines whether the good faith exception to the exclusionary rule applies.[32] If the exception does not apply, the Court then determines

---

[28] *See Harrelson*, 705 F.2d at 738.

[29] *Id.*

[30] *Cf. United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) ("A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing."); *accord United States v. Thompson*, 540 F. App'x 445, 447 (5th Cir. 2013).

[31] *See United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). Although the Fifth Circuit has articulated this test as the standard of review on appeal, *see, e.g., United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006), district courts use it in the first instance as well. *See, e.g., United States v. Hebert*, No. 09-154, 2011 WL 1103655, at *4 (E.D. La. Mar. 21, 2011); *United States v. Pickens*, No. 3:12−CR−356−D (01), 2013 WL 1155414, at *4 (N.D. Tex. Mar. 21, 2013).

[32] *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014). If the good faith exception applies, the Court does not proceed to the second step unless the case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates." *United States v. Mays*,

whether the magistrate judge had a "substantial basis" for concluding that probable caused supported the warrant.[33]

In *United States v. Leon*, the Supreme Court held that evidence obtained pursuant to a search warrant later determined to be invalid will not be suppressed if officers relied on the warrant in good faith.[34]  In determining whether the good faith exception applies, courts "do not attempt an 'expedition into the minds of police officers' to determine their subjective belief regarding the validity of the warrant."[35]  Rather, the analysis "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[36]

The *Leon* Court identified four circumstances in which the good faith exception does not apply, because officers would have no objectively reasonable basis for believing the warrant was properly issued: (1) when the magistrate judge was misled by information in an affidavit the affiant knew or should have known was false; (2) when the magistrate judge "wholly abandoned his role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);"[37] (3) when the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" in failing to sufficiently describe the place to be searched or the items to be seized that officers

---

466 F.3d 335, 343 (5th Cir. 2006) (internal quotation marks omitted).  No such novel question exists in this case.

[33] *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997).

[34] 468 U.S 897 (1984).

[35] *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (quoting *Leon*, 468 U.S. at 922 n.23).

[36] *Leon*, 468 U.S. at 922 n.23.

[37] The Fifth Circuit has expanded the second exception to include situations where officers presenting the warrant affidavit "realize that the magistrate served only to rubber-stamp a previous decision reached by the police."  *See United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir. 1986).

cannot reasonably presume it to be valid.[38]  Ms. Crinel does not contend any of these circumstances is present in this case, nor could she.[39]  Accordingly, the Court may proceed with a good faith analysis.

The question presented is whether it was objectively reasonable for officers to rely on Judge Roby's neutrality at the time she issued the warrant.[40]  In other words, the Court must determine whether Judge Roby "appeared to [officers] to have fulfilled [her] duty to act as a 'neutral and detached' magistrate."[41]  This inquiry extends not only to the officers who executed the warrant, but also to those "who originally obtained it or who provided information material to the probable-cause determination."[42]

Ms. Crinel contends officers could not have been in good faith for three reasons. First, the Government knew Judge Roby was aware that Ms. Crinel and Mr. Roby served on the same board of directors at the time Judge Roby signed the search warrant.[43] Even if Judge Roby was aware of this common board membership (which the Government does not dispute),[44]  and even if Judge Roby was *also* aware Ms. Crinel was a target of the warrant (which the Government disputes),[45] the Court finds it was objectively reasonable for officers to believe Judge Roby considered any potential

---

[38] *See Leon*, 468 U.S. at 923.

[39] Only the second *Leon* exception is arguably implicated by this case.  In *Lo-Ji Sales*, the issuing magistrate accompanied law enforcement officers and, during the course of a six-hour search, instructed them to seize certain items he believed to be contraband.  442 U.S. at 322–23.  The Supreme Court held the magistrate judge was not "neutral and detached," because "he was . . . acting . . . as an adjunct law enforcement officer."  *Id.* at 327.  Ms. Crinel has not alleged Judge Roby acted as an "adjunct law enforcement officer."  Furthermore, there is no evidence or allegation that Judge Roby merely "rubber-stamped" the warrants issued in this case.  *See supra* note 37.

[40] *See United States v. Shaw*, 252 F.3d 1356, at *4 (5th Cir. 2001) (unpublished).

[41] *See Breckenridge*, 782 F.2d at 1321–22.

[42] *Leon*, 468 U.S. at 922 n.24.

[43] *Cf.* R. Doc. 26-1, p. 13.

[44] *See* R. Doc. 209-3, ¶4.

[45] *See id.* at ¶5.

conflict stemming from the common board membership and concluded it did not affect her neutrality.[46]

Second, Ms. Crinel contends any good faith the officers possessed at the beginning of the search was destroyed once Mr. Roby arrived on the scene.[47] This argument requires some backstory. Judge Roby's assistant previously informed the Government that Judge Roby would not review the warrant if her husband represented any of the targets.[48] Because the Government was not aware of an attorney-client relationship between Mr. Roby and Ms. Crinel,[49] officers presented the warrant to Judge Roby for review. According to Ms. Crinel, once Mr. Roby appeared at Abide's office while the search was ongoing, it should have been clear to the Government that he represented Ms. Crinel. Thus, the conflict of which Judge Roby's assistant previously warned had come to fruition: Judge Roby issued a search warrant targeting an individual her husband represented. For this reason, Ms. Crinel argues the search should have been stopped, because officers were no longer "reasonably relying on any neutrality of the Magistrate when [they] went forward with the search and seizure."[50]

This argument misunderstands the pertinent inquiry in a good faith analysis. When a defendant argues the issuing judge was impermissibly biased, the question presented is whether it was objectively reasonably for a well-trained officer to rely on the judge's neutrality.[51] At the time she issued the warrant, there is no allegation—much less evidence—that Judge Roby knew her husband represented Ms. Crinel. Thus, there

---

[46] *See Leon* 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment . . . . [O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.") (second alteration in original) (internal quotation marks omitted).
[47] *See, e.g.*, R. Doc. 223, p. 4–5.
[48] *See* R. Doc. 209-3, ¶4.
[49] *See id.* at ¶5.
[50] R. Doc. 223, p. 4.
[51] *See Shaw*, 252 F.3d at *4; *Breckenridge*, 782 F.2d at 1321–22.

was no reason for officers to believe Judge Roby labored under any conflict of interest when she signed the search warrant, and it was objectively reasonable for officers to rely on her neutrality.   This reliance does not become any less reasonable once the Government learned of the attorney-client relationship between Mr. Roby and Ms. Crinel.[52]  The Government's newly acquired knowledge cannot be retroactively imputed to Judge Roby.   In other words, an objectively reasonable officer would not question Judge Roby's decision-making process days before the search based on information learned during the search.

Finally, Ms. Crinel argues the good faith exception does not apply, because officers learned some time *after* the search of an alleged extramarital relationship between Ms. Crinel and Mr. Roby.[53]  This argument need not detain the Court long.  The relevant inquiry is whether officers acted in good faith at the time the warrant was executed.  Because they did, any after-the-fact revelations are irrelevant to this analysis.

C. *Conclusion*

*Leon* and its progeny counsel that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[54]  The exclusionary rule is a prophylaxis designed "to curb police rather than judicial misconduct."[55]  Thus, even if Judge Roby was not neutral and detached,[56] suppression in

---

[52] The Government contends it did not become aware of the attorney-client relationship until sometime after the search.  *See* R. Doc. 212, p. 19.  The Court makes no finding on this issue, because it does not affect the Court's conclusion.

[53] *See, e.g.*, R. Doc. 223 at p. 6.  To the extent Ms. Crinel argues the Government should have disclosed this newly acquired knowledge to the judge presiding over the forfeiture proceeding, *see, e.g.*, R. Doc. 36, p. 6–7,  R. Doc. 74, p. 3, R. Doc. 223, p. 6–7, that argument should be made in the forfeiture proceeding and is not properly before the undersigned.

[54] *Leon*, 468 U.S. at 918.

[55] *See Herring v. United States*, 555 U.S. 135, 142 (2009).

[56] The Court makes no finding on this issue.

this case would not further the purposes of the exclusionary rule, because the officers acted in good faith.[57]

## II.  Whether Evidence Must Be Returned

In addition to challenging the search and seizure under the Fourth Amendment, Ms. Crinel also mounts a challenge under the Equal Protection Clause.  Specifically, Ms. Crinel argues the pre-indictment seizure violated her right to equal protection under the law, because she was treated differently from similarly situated white (and male) defendants.  The remedy she seeks is the return of all assets seized prior to indictment.[58] The Court has already considered and rejected this argument, albeit in a slightly different procedural posture.

Ms. Crinel previously filed a motion to compel seeking evidence relevant to her Equal Protection claim.[59]  The magistrate judge denied the motion, because Ms. Crinel failed to make a *prima facie* showing of selective prosecution.[60]  This Court affirmed on appeal under the deferential standard in Rule 59(a).[61]

The instant motion presents essentially the same legal issues, but because the Court now reviews Ms. Crinel's arguments directly—as opposed to after the magistrate judge has issued a ruling—the standard of review is *de novo*.  Nonetheless, while the standard of review is different, the outcome remains the same.

As in her motion before the magistrate judge, Ms. Crinel contends "there is simply no question that [she] has made a prima facie showing of racially disparate

---

[57] *See Leon*, 468 U.S. at 916 ("[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.").
[58] The Court is not aware of a single case—nor has Ms. Crinel identified any—in which a court has ordered similar relief.
[59] R. Doc. 33.
[60] R. Doc. 170.
[61] R. Doc. 306.

treatment in this federal district because she is an African-American woman."[62] In support of this argument, Ms. Crinel points primarily to the case of Mark Morad—a Caucasian male charged with similar healthcare crimes.[63] Unlike Ms. Crinel, Morad's assets were not seized pre-indictment. According to Ms. Crinel, this evidence is sufficient to demonstrate selective prosecution.  The Court disagrees.[64]

An Equal Protection-based claim of selective prosecution requires the defendant to present "clear evidence" of both discriminatory effect and discriminatory intent.[65] *Morad* provides no such evidence, because in that case the Government seized assets pre-indictment of both black *and* white defendants.[66]  Thus, when examined in context, *Morad* does not provide an example in which a similarly situated individual outside the protected class was treated differently.  Furthermore, if, as the Court previously ruled, Ms. Crinel has not presented sufficient evidence to warrant discovery on her equal protection claim,[67] it follows *a fortiori* that same evidence is not sufficient to prevail on the merits.

---

[62] R. Doc. 26-1, p. 19.

[63] Despite briefly referencing two other cases, *see* R. Doc. 26-1, p. 18, it clear that Ms. Crinel relies primarily on the *Morad* case.  *See* R. Doc. 220, p. 3 ("In deciding the instant motion, the Defendants have asked the Court to compare the *Morad* case to the *Crinel* case . . . .").  Nonetheless, the Court finds the two cases Ms. Crinel mentions in passing do not support the relief she requests in this case.

[64] Accordingly, Ms. Crinel is not entitled to an evidentiary hearing under *Harrelson.  See supra* note 9.

[65] *See* R. Doc. 306, p. 1–2; *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

[66] *See* R. Doc. 306, p. 2.

[67] *See generally* R. Doc. 306.

## CONCLUSION

For the reasons previously stated, the suppression of evidence is not appropriate in this case, because officers relied on Judge Roby's neutrality in good faith. Furthermore, Ms. Crinel has failed to establish an Equal Protection violation and is not entitled to the return of assets seized pre-indictment.

**New Orleans, Louisiana, this 27th day of July, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**