# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 15-61** |
| **LISA CRINEL, ET AL.** | **SECTION "E" (2)** |

## ORDER AND REASONS

The Court now rules on evidentiary issues raised in advance of the trial which begins on April 10, 2017. First, on October 26, 2016, the Court ruled from the bench[1] with respect to the Government's notice(s) of intent to use "other act" evidence against Henry Evans under F.R.E. 404(b)[2] and Defendant Evans' related motion(s) *in limine*[3] to preclude from evidence various uncharged crimes and offenses. The Court ruled that the Government may not introduce in its case-in-chief evidence of a 1986 disciplinary investigation of Dr. Evans or a 2011 investigation resulting in a letter from the Louisiana Board of Medical Examiners to Dr. Evans.[4] Following the Court's ruling, the Government requested the opportunity to file a memorandum addressing whether the Court's 404(b) ruling precludes the Government from introducing evidence of these two "other acts" in the event Defendant Evans chooses to testify at trial.[5] The Court allowed the Government to submit a memorandum by November 2, 2016 on whether Federal Rule of Evidence 404(b) excludes this "other acts" evidence only in the Government's case in chief.[6] The

---

[1] *See* R. Doc. 832, at 3; R. Doc. 881, at 110.

[2] R. Docs. 701, 708, 763.

[3] R. Docs. 732, 733, 813. The Court treated Defendant Henry Evans' Opposition to the Government's Notice, R. Doc. 732, as a motion *in limine* to preclude the admission of the challenged evidence. *See, e.g. United States v. Nunez et al.*, 2016 WL 3746573, at *1 (E.D. La. Jul. 8, 2014) (where the court treated the defendant's oppositions to the government's notice of intent as motions *in limine*).

[4] *See* R. Doc. 832, at 3; R. Doc. 881, at 110.

[5] R. Doc. 881, at 211, 213-16, 223.

[6] R. Doc. 832, at 2. On November 2, 2016, the Government filed its memorandum. R. Doc. 839.

Court allowed the Defendants to file an opposition by November 9, 2016.[7] The Court heard oral argument on December 20, 2016.[8]

Second, Defendants Henry Evans,[9] Michael Jones[10] and Paula Jones[11] filed objections to the Government's summary exhibits and the Court heard oral argument on the objections on October 26, 2016. In addition, in his opposition to the Government's memorandum regarding the application of Rule 404(b) to areas of trial other than the Government's case-in-chief, and during the oral argument held on December 20, 2016, Defendant Michael Jones re-urged his objections to some of the proposed summary exhibits arguing they contain unnoticed extrinsic evidence and should be excluded pursuant to Federal Rule of Evidence 404(b).[12]

The Court now (1) clarifies its October 26, 2016 Order[13] with respect to whether the Court's 404(b) ruling precludes the Government from introducing evidence of the two "other acts" by Defendant Evans in the event he testifies at trial, and (2) rules on Defendants' objections to certain summary exhibits.

## STANDARDS OF LAW

I. Rule 404(b) of the Federal Rules of Evidence

"Evidence of an uncharged offense arising out of the same transactions as the offense charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b)."[14] Generally, evidence of other acts is intrinsic "when the evidence of the other

---

[7] R. Doc. 832, at 2. The Court subsequently continued the Defendants' deadline to respond until November 16, 2016 at 5:00 p.m. R. Doc. 845. Defendant Henry Evans, R. Doc. 854, and Defendant Michael Jones, R. Doc. 858, filed responses to the Government's memorandum on November 16, 2016.

[8] R. Doc. 886.

[9] R. Doc. 794.

[10] R. Doc. 795.

[11] R. Doc. 793.

[12] *See* R. Doc. 858; R. Doc. 889.

[13] R. Doc. 832.

[14] *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991).

act and the evidence of the crime charged are 'inextricably intertwined; or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged."[15] The Fifth Circuit has explained, "It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof."[16] "Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member."[17] "This evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place."[18] "Intrinsic evidence does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'"[19]

Instead, Federal Rule of Evidence 404(b) governs the introduction of extrinsic evidence. Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[20]

In order to be admissible under Rule 404(b), the evidence in question must satisfy the two-pronged test articulated in *United States v. Beechum*.[21] The first prong of the test is whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character."[22] As a threshold matter, the relevancy of extrinsic act evidence is conditioned

---

[15] *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).
[16] *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009).
[17] *Id.* at 784 (citing *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985)).
[18] *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996).
[19] *Id.* (quoting *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir.), *cert. denied*, 513 U.S. 1009 (1994)).
[20] FED. R. EVID. 404(b).
[21] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).
[22] *Id.*

on whether the defendant, in fact, committed the extrinsic act.[23] Rule 104(b) of the Federal Rules of Evidence provides: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."[24] "Therefore, as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant" under Rule 104(b).[25]

When "determin[ing] whether there is sufficient evidence for the jury to find the defendant in fact committed the extrinsic offense[,] . . . [t]he judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense," and the Government need not "come forward with clear and convincing proof."[26] Rather, the standard for the admissibility of extrinsic offense evidence is whether there is evidence sufficient to permit a reasonable jury to find the preliminary facts by a preponderance of the evidence.[27]

Once it is established that the defendant committed the other act, the Court must look at other indicia of relevance. When determining whether extrinsic act evidence is relevant to an issue other than the defendant's character, as required to be admissible under 404(b), "relevance is a function of [the extrinsic offense's] similarity to the offense charged."[28] "[S]imilarity means more than that the extrinsic and charged offense have a

---

[23] *Id.* at 912. *See also U.S. v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir.) *cert. denied*, 135 S. Ct. 298 (2014).
[24] FED. R. EVID. 104(b).
[25] *Beechum*, 582 F.2d at 912–13; *Gutierrez-Mendez*, 752 F.3d at 423.
[26] 582 F.2d at 913.
[27] *Id*; *U.S. v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991) (citing *Huddleston v. U.S.*, 485 U.S. 681, 688–90 (1988)).
[28] *Id.*

common characteristic"—the common characteristic must be "the significant one for the purpose of the inquiry at hand."[29]

The Third Circuit, in *United States v. Brown*, explained what the Government must demonstrate in order to show that proposed 404(b) evidence is relevant to the charged conduct:[30]

> It is not enough for the Government to merely identify a valid non-propensity purpose under Rule 404(b)(2). Crucially, the Government must also show that the evidence is relevant to that purpose. To do so, the prosecution 'must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed the proffered prior offense, he therefore is more likely to have committed the charge offense.[31]

The second step of the *Beechum* test is that "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."[32] "The task for the court in its ascertainment of probative value and unfair prejudice under rule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense."[33] "Some of the factors [a court] must consider include: (1) the extent to which the defendant's unlawful intent is established by other evidence; (2) the overall similarity of the extrinsic and charged offenses; and (3) how much time separates the extrinsic and charged offenses because temporal remoteness depreciates the probity of the extrinsic offense."[34]

---

[29] *Id.* (internal quotation marks and citation omitted).
[30] 765 F.3d 278 (3d Cir. 2014). The Third Circuit employs an almost identical test to the Fifth Circuit's requirements for admitting 404(b) evidence first articulated in *Beechum*. *See id.* at 291.
[31] *Id.* at 292-93 (internal citations omitted).
[32] 582 F.2d at 911.
[33] *Id.* at 914.
[34] *United States v. Adair*, 436 F.3d 520, 525 (5th Cir. 2006) (quoting *Beechum*, 582 F.2d at 915) (internal quotations omitted).

## II.    Rule 608(b) of the Federal Rules of Evidence

"Federal Rule of Evidence 608 governs proof of a witness's truthful or untruthful character if offered to attack or rehabilitate the witness's credibility."[35] Rule 608(a) sanctions the use of reputation and opinion testimony to establish the truthful or untruthful character of a witness.[36] Rule 608(b) permits cross-examination of a witness about specific instances of his conduct that bear on his truthful or untruthful nature.[37] Rule 608(b) provides:

> Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character or truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
> (1) The witness; or
> (2) Another witness whose character the witness being cross examined has testified about.[38]

This Rule "permit[s] inquiry on cross examination into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness."[39] Although the rule permits inquiry on cross examination into specific instances, Rule 608 serves as an "absolute prohibition on extrinsic evidence . . . when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness."[40]

To be admissible under this Rule, "the alleged bad act must have a basis in fact and . . . the incidents inquired about must be relevant to the character traits at issue in the

---

[35] *United States v. Hudson*, No. CRIM.A. 09-171, 2011 WL 5357902, at *2 (E.D. La. Nov. 7, 2011).
[36] Fed. R. Evid. 608(a).
[37] *See* Fed. R. Evid. 608(b).
[38] *Id.*
[39] *United States v. Skelton*, 514 F.3d 433, 443-44 (5th Cir. 2008) (citing *United States v. Farias-Farias*, 925 F.2d 805, 809 (5th Cir. 1991)).
[40] FED. R. EVID. 608 advisory committee's note to the 2003 amendments.

trial."[41] A prosecutor, however, "may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable."[42] Rather, as explained above, "Rule 608 authorizes inquiry only into instances of misconduct that are 'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery and embezzlement."[43] Stated differently, "The application of Rule 608(b) to exclude extrinsic evidence of a witness's conduct is limited to instances where the evidence is introduced to show a witness's *general character for truthfulness.*"[44] As the Fifth Circuit has explained, "Rule 608(b) [is] inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue."[45]

The Fifth Circuit has determined that a district court is granted broad discretion to make determinations concerning admissibility of impeachment evidence under Rule 608(b).[46] In addition, as the Fifth Circuit has also explained, "[E]ven if character evidence is deemed admissible under Rule 608(b), its admissibility is subject to Rule 403."[47]

### III.    Intersection of Rules 404(b), 608(b) and Other Rules of Evidence

"Whether Rule 404(b) or Rule 608(b) applies to the admissibility of other-act evidence depends on the purpose for which the prosecutor introduced the other act evidence."[48] "Rule 404(b) applies when other-act evidence is offered as relevant to an issue in the case, such as identity or intent. Rule 608(b) applies when other-acts evidence

---

[41] *Id.* (citing *United States v. Nixon*, 777 F.2d 958, 970 (5th Cir. 1985)).

[42] *United States v. Tomblin*, 46 F.3d 1369, at 1388-89 (5th Cir. 1995) (internal citations omitted).

[43] *Id.* at 1389.

[44] *Seklton*, 514 F.3d at 441 (emphasis in original).

[45] *Id.* at 441-42.

[46] *Id.* (citing *Farias-Farias*, 925 F.2d at 809).

[47] *Id.*; *see also United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("the district court may under Rule 608(b) determine if evidence is probative of truthfulness, and under Rule 403 exclude even probative evidence if the prejudicial effect outweighs the probative value.").

[48] *Tomblin*, 46 F.3d at 1388 (internal citations and quotations omitted).

is offered to impeach a witness, to show the character of the witness for untruthfulness, or to show bias."[49]

When the Government offers other-act evidence to impeach a testifying defendant on cross-examination "'to show the character of the witness for untruthfulness,' Rule 404(b)'s notice provision and its two-part admissibility test" do not apply.[50] "Although this does not give the prosecution free rein, it allows the government, under Federal Rule of Evidence 608(b), to cross-examine the defendant with respect to instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement."[51] The Fifth Circuit has cautioned that "a prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is not otherwise available."[52]

As explained above, the Fifth Circuit has clearly established that "Rule 608(b) [is] inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue."[53] As the Fifth Circuit has further explained, however, evidence introduced to contradict a witness's testimony as to a material issue must be admissible under another provision of the Federal Rules of Evidence.[54]

IV.    Rules 611(a) and 1006 of the Federal Rules of Evidence

The admission of organizational charts and summary evidence is governed by Federal Rules of Evidence 611(a) and 1006.[55] Rule 611(a) provides, "The court should

---

[49] *Id.*
[50] *United States v. Akpan*, 407 F.3d 360, at 373 (5th Cir. 2005).
[51] *Id.* (internal quotations and citations omitted).
[52] *Tomblin*, 46 F.3d at 1388-89.
[53] *Skelton*, 514 F.3d at 441-42.
[54] *See id.*
[55] *See, e.g. United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000).

exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."[56] The Fifth Circuit has explained that the use of charts as "'pedagogical' devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a).[57] Charts admitted into evidence under Rule 611(a) "should not go to the jury room absent consent of the parties."[58]

"In contrast, Rule 1006 applies to summary charts based on evidence previously admitted but which is so voluminous that in-court review by the jury would be inconvenient."[59] Rule 1006 of the Federal Rules of Evidence provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.[60]

"Summaries admitted under Rule 1006 may go to the jury room."[61]

## DISCUSSION

I.   1986 and 2011 Investigations by the Louisiana Board of Medical Examiners

b.   The Government May Not Introduce Evidence of the 1986 or 2011 Investigations Under Rule 404(b)

On September 21, 2016, the Government filed its Notice of Intent to Use "Other

---

[56] FED. R. EVID. 611(a).
[57] *See id.* (internal quotations omitted) (citing *United States v. Posada-Rios*, 158 F.3d 832, 869 (5th Cir. 1998); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416 (5th Cir. 1985).
[58] *Taylor*, 210 F.3d at 315.
[59] *Id.* (citations omitted).
[60] FED. R. EVID. 1006.
[61] *United States v. Bishop*, 264 F.3d 535, 548 (5th Cir. 2001).

Act" Evidence against Henry Evans Under F.R.E. 404(b).[62] The Government provided notice that it intended to introduce three prior instances involving Defendant Henry Evans: (1) a 1986 disciplinary investigation in which Defendant Evans' medical license was suspended for five years, with all but four months suspended, for allowing three unlicensed individuals in his employ to practice medicine, including issuing prescriptions that were pre-signed by Defendant Evans;[63] (2) a formal letter following an investigation in June of 2011 when Defendant Evans was found by the Louisiana State Board of Medical Examiners ("the Board") to have prepared two separate and contradictory medical records and reports regarding the same patient, and provided these files to two different lawyers in the course of two lawsuits wherein Defendant Evans was called as an expert;[64] and (3) blank face-to-face forms signed and submitted by Defendant Evans to another home health agency, Comprehensive Nursing and Home Health Services ("Comprehensive"), discovered pursuant to a search in a separate investigation.[65]

On September 29, 2016, Defendant Evans filed an Opposition[66] to the Government's notice in addition to a motion *in limine* to preclude from evidence various uncharged crimes and offenses.[67] On October 11, 2016, the Government filed its Supplemental Notice of "Other Act" Evidence and Consolidated Response to Defendant Evans' Motion *in Limine*.[68] On October 24, 2016, Defendant Evans filed his Opposition to the Government's Supplemental Notice of "Other Act" Evidence.[69] The Court treated

---

[62] R. Doc. 708. This was the second time the Government has filed its notice of intent regarding Defendant Evans. *See* R. Doc. 701. The Government filed an amended notice to correct a statement that the blank forms in question were found during a search of Dr. Evans' office and had not sent to Abide. R. Doc. 708, at 4 n.1.
[63] R. Doc. 708, at 6.
[64] *Id.* at 4.
[65] R. Doc. 763, at 3-4.
[66] R. Doc. 732.
[67] R. Doc. 733.
[68] R. Doc. 763.
[69] R. Doc. 813.

Defendant Evans' Opposition as part of his motion *in limine* to preclude the admission of the challenged evidence.[70]

On October 19, 2016, the Court heard oral argument on the Government's notice of intent to use other acts evidence against Defendant Evans and Defendant Evans' objections to the notice of intent, which the Court treated as motions in *limine*.[71] During oral argument held on October 26, 2016, the Court, from the bench, ruled that the Government may not introduce evidence in its case-in-chief of the 1986 disciplinary investigation into Defendant Evans or the 2011 investigation resulting in a letter from the Louisiana Board of Medical Examiners to Defendant Evans.[72] The Court, after conducting a thorough analysis using the *Beechum* test, determined that neither the 1986 disciplinary investigation nor the 2011 letter satisfied the two pronged test.[73] The Court found the evidence related to the 1986 investigation to be too old and insufficiently probative of Defendant Evan's intent or lack of mistake with respect to the crimes charged in this case.[74] The Court excluded evidence related to the 2011 investigation because the evidence was not relevant to show intent to defraud Medicare.[75] The Government has argued that "The Court did not orally address any of the other Rule 404(b) permissible purposes with respect to these two topics."[76]  Presumably, the Government believes the Court did not consider whether the extrinsic evidence offered was admissible to prove motive,

---

[70] *See, e.g. United States v. Nunez et al.*, 2016 WL 3746573, at *1 (E.D. La. Jul. 8, 2014) (where the court treated the defendant's oppositions of the government's notice of intent as motions *in limine*).
[71] R. Doc. 791.
[72] *See* R. Doc. 832, at 3. The Court originally precluded the Government from introducing evidence of the blank face-to-face forms found at Comprehensive after finding the Government had failed to provide timely notice pursuant to the Court's scheduling order. After the granting of a joint motion to continue, the Court reconsidered the issue and determined the Government could introduce extrinsic evidence of the blank face-to-face forms found at Comprehensive as permissible Rule 404(b) evidence. *See* R. Doc. 881, at 232.
[73] *See* R. Doc. 881, at 110.
[74] *See id.* at 109.
[75] *Id.* at 110.
[76] *See* R. Doc. 839 at 2.

opportunity, preparation, plan, knowledge, identity or lack of accident. The Court now clarifies that it did consider all the purposes for which extrinsic evidence may be introduced under F.R.E. 404(b) and found none justified admission of the evidence.[77]

### a. Pursuant to Rule 608(b), If Defendant Evans Testifies, the Government May Question Defendant Evans on Cross-Examination About the 1986 Disciplinary Investigation But Not the 2011 Investigation

During oral argument held on October 26, 2016, the Court allowed the Government to submit a memorandum by November 2, 2016 on whether Federal Rule of Evidence 404(b) excludes the 1986 and 2011 instances of "other acts" evidence against Dr. Evans only in the Government's case in chief. The Court allowed the Defendants to file an opposition by November 9, 2016.[78] On November 7, 2016 the Government filed its memorandum on the application of Federal Rule of Evidence 404(b) to areas of the trial other than the Government's case-in-chief.[79] As the Government explained in its memorandum provided to the Court, it believes such evidence is permissible under Rule 608(b).[80] Defendant Evans filed a response/reply on November 16, 2016 and a request for oral argument.[81] Defendant Paula Jones filed a response on November 16, 2016.[82] Defendant Michael Jones filed a response on November 16, 2016.[83] The Government filed a reply on December 8, 2016 and a sur-reply on December 20, 2016.[84] On December 20, 2016, the Court heard oral argument.[85]

---

[77] The purposes mentioned in the Court's ruling were the ones most likely to be applicable, but the Court considered and rejected use for other purposes, as well.
[78] R. Doc. 832.
[79] R. Doc. 839.
[80] *See, e.g.* R. Doc. 839, at 9-10.
[81] R. Docs. 854 and 856.
[82] R. Doc. 857.
[83] R. Doc. 858.
[84] R. Docs. 878 and 885.
[85] R. Doc. 886.

The Government argues it "may inquire in cross-examination about past conduct that goes to the [D]efendant's character for truthfulness under Rule 608(b)."[86] Further, the Government maintains "[c]ourts should permit inquiry on cross examination of a defendant into areas that bear on his character for truthfulness, and may permit extrinsic evidence to be admitted that contradicts this testimony and is otherwise admissible to show intent, knowledge, absence of mistake, [or] lack of accident under Rule 404(b)."[87] As explained above, "Rule 608 authorizes inquiry only into instances of misconduct that are 'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery and embezzlement."[88] Rule 608(b) does *not*, as discussed below, apply "in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue."[89] Further, as explained above, although Rule 608(b) permits inquiry on cross examination into specific instances of conduct which bear on the testifying defendant's credibility, Rule 608 serves as an "absolute prohibition on extrinsic evidence . . . when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness."[90] Stated differently, the Fifth Circuit has held that Rule 608(b):

> [P]rohibits proof by extrinsic evidence even where the prosecutor inquiries into prior acts on cross-examination. The cross-examining attorney must take the witness' answer. This result is consistent with the long-standing doctrine that a witness may not be impeached with extrinsic evidence as to a collateral manner. Prior wrongful acts not resulting in a criminal conviction ordinarily are collateral matters.[91]

---

[86] R. Doc. 839, at 11.

[87] *Id.*

[88] *Tomblin*, 46 F.3d at 1389.

[89] *Skelton*, 514 F.3d at 441-42.

[90] FED. R. EVID. 608 advisory committee's note to the 2003 amendments.

[91] *United States v. Davis*, 2003 WL 1904038, at *2 (E.D. La. Apr. 17, 2003) (quoting *United States v. Herzberg*, 558 F.2d 1219, 1223 (5th Cir. 1977)).

The Fifth Circuit also has held that "[a] district court has substantial discretion in admitting testimony under Rule 608(b)."[92]

With respect to the 1986 disciplinary investigation, the Court finds this act does bear on Defendant Evans's character for truthfulness. In *United States v. Umawa Oke Imo*, the Fifth Circuit held the district court did not abuse its discretion in permitting the Government to cross-examine the testifying defendant regarding blank prescription forms she had previously signed after explicitly finding such evidence was probative of the defendant's character for truthfulness.[93] As a result, if Defendant Evans chooses to testify at trial, the Government, during cross-examination, may question Defendant Evans regarding the events at issue in the 1986 disciplinary investigation for the purpose of challenging his character for truthfulness pursuant to Rule 608(b), but the Government is required to accept his answer and may not impeach him with extrinsic evidence as to this collateral manner. [94]

With respect to the 2011 investigation, the Court finds this act does not sufficiently bear on Defendant Evans's character for truthfulness as contemplated by Rule 608(b). As a result, even if Defendant Evans chooses to testify at trial, the Government may not question Defendant Evans regarding the events which resulted in the 2011 investigation pursuant to Rule 608(b).

---

[92] *United States v. Heard*, 709 F.3d 413, 433 (5th Cir. 2013) (citing *Farias-Farias*, 925 F.2d at 809).
[93] 739 F.3d 226, 239 (5th Cir. 2014).
[94] If Defendant Evans testifies on direct at trial that he was not aware there was anything wrong with signing a blank form or that he was never investigated by the Louisiana Board of Medical Examiners, the Government is free to argue that he has opened the door to cross examination on the 1986 and 2011 disciplinary investigations under Rules 402 and 403. The Court defers ruling on this issue. *See United States v. Lopez*, 979 F.2d 1024, 1032 (5th Cir. 1992); *United States v. Gilmore*, 553 F.3d 266, 270 (3d Cir. 2009).

## II.    Objections to Proposed Summary Exhibits

The deadline to file objections to the Government's proposed summary exhibits was October 19, 2016 at 5:00 p.m.[95] Defendants Paula Jones,[96] Henry Evans[97] and Michael Jones[98] filed objections. Defendants argued the Government had yet to produce the underlying supporting documents with respect to certain summary exhibits,[99] that certain summary exhibits were misleading and prejudicial in their current form[100] and that certain summary exhibits fell outside the scope of Federal Rule of Evidence 1006 and should not be admitted.[101]

The Court held oral argument with respect to these objections on October 26, 2016.[102] During oral argument, the Defendants acknowledged they have received the underlying data for all summary exhibits and as a result, the Court dismissed the objections raised on this basis as moot.[103] With respect to Defendant Paula Jones' other objections, the Government stated it would provide the Defendant with updated charts correcting the issues identified by the Court and that the parties would notify the Court if the Government's updates did not resolve her concerns.[104] In addition, Defendant Michael Jones clarified he specifically objects to two of the Government's proposed

---

[95] *See,* R. Doc. 666, at 4.
[96] R. Doc. 793.
[97] R. Doc. 794.
[98] R. Doc. 795.
[99] R. Doc. 794, at 1-4; R. Doc. 795-1, at 3-4.
[100] R. Doc. 793, at 1-2. Defendant Paula Jones objected to Bates Numbers 352529, 351520 and 351508, attached as exhibits to the Defendant's motion in R. Doc. 793-1, on the grounds that these charts compared unequal time periods and thus are misleading.
[101] *See* R. Doc. 795-1, at 7-9.
[102] R. Doc. 832.
[103] *See id.* at 2.
[104] *See* R. Doc. 881, at 201. During oral argument, the Court agreed Bates Numbers 352529, 351520 and 351508 were "visually misleading." *See id.* at 200. In an email to the Court on November 2, 2016, the Government provided notice to the Court that it had revised and circulated versions of the specific summaries objected to by Defendant Paula Jones but that counsel for Defendant Paula Jones responded by stating her original objections still apply. The revised versions of the summary exhibits objected to by Paula Jones are Bates Numbers 358279, 351520 (was not revised), 358277. In addition, the Government added Bates No. 358278.

summary exhibits, identified as Bates Numbers 349727 and 358276, on the basis that these summary exhibits contain impermissible extrinsic evidence.[105]

      a. <u>Referrals to Abide Home Health by Dr. Jones Before and After Paula Jones' Pay Increase – Bates No. 358279</u>

Defendant Paula Jones objects to the Government's proposed summary exhibit, "Referrals to Abide Home Health by Dr. Jones Before and After Paula Jones' Pay Increase."[106] This proposed summary exhibit is a bar graph comparing the number of referrals to Abide by Defendant Michael Jones from the period of May 2012 through 2013, labeled as "Before Paula Jones' Pay Increase," to the period of May 2013 through May 2014, labeled as "After Paula Jones' Pay Increase."

Defendant Paula Jones originally opposed this summary exhibit because the bars compared unequal periods of time.[107] In addition, Defendant Paula Jones argued the chart was misleading because the September 2012 entry date was the "inception of Dr. Jones' return to practice in New Orleans, and any new medical practice involves a small amount of business at inception which will increase over time."[108]

Although the Government's revised version of this proposed summary exhibit appears to satisfy the first concern raised by Defendant Paula Jones, the Court finds that in reality it does not. First, although the chart now ostensibly compares equal periods of time, it is clear the additional three months added to the first bar are misleading as they cover a time when Defendant Michael Jones had not yet returned to practice in New

---

[105] *See id.* at 133, 209. Defendant Michael Jones also argues Bates No. 358276 is not a summary exhibit as it is not a "compilation of data" but instead "is, essentially, the [G]overnment's argument." *Id.* at 133.

[106] Bates No. 358279. Defendant Paula Jones originally objected to Bates No. 352529. As explained above, during oral argument held on October 26, 2016, the Government agreed to provide an updated version of this chart to the Defendants. *See* R. Doc. 881, at 201. Bates No. 358279 is the updated version of Bates No. 352529.

[107] *See* R. Doc. 793, at 1. Originally, the first bar represented a period of nine months from September 2012 until May 2013 whereas the second bar represented a period of twelve months from May 2013 to May 2014.

[108] *Id.* at 1-2.

Orleans and thus was not making any referrals to Abide or any other health agency in New Orleans.[109] The Government argues, "Paula Jones is free to cross examine the summary's author as to why this date was chosen," and to explain the date of Defendant Michael Jones' return to practice in New Orleans.[110] With respect to this proposed summary exhibit, however, the Courts finds the opportunity for the Defense to cross-examine the exhibit's author is not sufficient to outweigh the danger of unfair prejudice and the risk that the exhibit will mislead the jury. In addition, as will be discussed below, the introduction of this chart will needlessly present cumulative evidence. As a result, the Court rules that the Government may not use or introduce into evidence Bates No. 358279 as it its probative value is outweighed by the risk of undue prejudice.

    b.  <u>Referrals to Abide Home Health by Dr. Jones: September 2012 through May 2014 – Bates No. 358278</u>

In addition to providing the Defendants with the updated bar chart[111] discussed directly above, the Government has now provided an alternative depiction of the referrals to Abide Home Health by Dr. Jones during the period ranging from September 2012 to May 2014.[112] As opposed to Bates No. 358279 which compares two, twelve-month periods, Bates No. 358278 is a line graph providing the number of referrals each month from September 2012 to May 2014. In addition, the proposed chart reflects the period of time, namely May 2013, when Defendant Paula Jones' salary increased.

The Court finds Bates No. 358278 is a proper Rule 1006 summary exhibit. While the Defendant may have some of the same objections as she did to Bates No. 358279, namely that the chart is misleading because the September 2012 entry date was the

---

[109] In both the original and revised versions of the summary exhibit, the number of referrals during the first period of time is 36 referrals.
[110] R. Doc. 814, at 8.
[111] Bates No. 358279.
[112] Bates No. 358278.

"inception of Dr. Jones' return to practice in New Orleans, and any new medical practice involves a small amount of business at inception which will increase over time,"[113] the Court recognizes the Defendant will have the opportunity to cross-examine the chart's author and such questioning goes to the exhibit's weight and not its admissibility. Unlike the bar chart in Bates No. 358279, the probative value of the line graph depicted in Bates No. 358278 is not outweighed by the danger of unfair prejudice or the risk that it will mislead the jury. As a result, the Government may introduce Bates No. 358278 as a Rule 1006 summary exhibit.

    c.  <u>Checks Written to Paula Jones from Abide – Bates No. 358277</u>

Defendant Paula Jones also objects to proposed summary exhibit, "Checks Written to Paula Jones from Abide."[114] This proposed summary exhibit is a table containing information regarding thirty-seven checks issued by Abide to Paula Jones over the period of time between August 2012 and May 2014. The table is separated into two separate time periods, the first covering August 2012 through May 2013 and the second depicting May 2013 through May 2014. The Government has indicated the separate time periods represent the periods before and after Abide allegedly agreed to double Defendant Paula Jones' salary in exchange for her husband, Defendant Michael Jones', increased referrals.[115] Directly below each of the two sections is the aggregation of the total amount paid to Paula Jones during each of the two periods of time. At the very bottom of the proposed summary exhibit is a box highlighting the difference in the amount paid between the two time periods.

---

[113] *See* R. Doc. 793, at 1-2 (objecting to Bates No. 352529, revised as Bates No. 358279).
[114] Bates No. 358277. Defendant Paula Jones originally objected to Bates No. 351508. Bates No. 358277 is the updated version of Bates No. 351508.
[115] *See* R. Doc. 814, at 9.

Defendant Paula Jones objects to this proposed summary exhibit on the grounds that it "unfairly compares" unequal pay periods.[116] Whereas the period of time prior to the alleged agreement with Abide contains only seventeen pay periods, the period of time after the alleged agreement contains twenty pay periods.[117] Defendant Paula Jones argues, this creates "the unfair inference that the later period reflect[s] more money and therefore [is] indicative of a 'kickback.'"[118] In its revised version, the Government attempted to address this concern by specifically highlighting the months covered by each period by adding a label next to the sums of the two periods of time.

The Court finds that in its current state, the probative value of Bates No. 358277 is outweighed by the danger of unfair prejudice and the risk it will mislead the jury. Because the periods of time being compared are of different lengths and contain an unequal number of pay periods, aggregating of payments for each of the two periods and comparing the difference between the two periods is likely to mislead the jury and create a danger of unfair prejudice. The Government, however, will be allowed to introduce a revised version of this chart as a summary exhibit so long as it does not include the sections of the table that aggregate the totals for each of the two time periods and does not state the difference in the aggregate amount received between the two periods.[119]

### d. Paula Jones Total Payments from Abide – Bates No. 351520

Defendant Paula Jones also objects to proposed summary exhibit, "Paula Jones Total Payments from Abide."[120] This proposed summary exhibits depicts the total amount of money paid by Abide to Paula Jones during the period after which the Government

---

[116] R. Doc. 793, at 2.
[117] *See id.*
[118] *Id.*
[119] See Attachment 1. Those figures highlighted in yellow must be redacted.
[120] Bates No. 351520.

contends Abide agreed to double Paula Jones' salary in exchange for her husband's increased referrals. Defendant Paula Jones argues this chart is "the total of all wages received by Paula Jones, not the mere increase in wages under the [G]overnment's theory of the case."[121]

The Court finds Bates No. 351520 is not a Rule 1006 summary exhibit because it does not summarize voluminous writings or data that cannot be conveniently examined in court. In fact, in the section directly above, the Court held that the Government may introduce into evidence a redacted version of Bates No. 358277, which is a table containing information on the twenty checks paid to Paula Jones. Bates No. 351520 is not a summary exhibit and is excluded from introduction into evidence on that basis, as well as because it is cumulative of evidence found in other exhibits.

   e.   <u>Home Health Referrals by Dr. Michael Jones for Time Period January 1, 2008 Through February 28, 2014 – Bates No. 349727</u>[122]

Defendant Michael Jones objects to the Government's proposed summary exhibit marked as Bates No. 349727, "Home Health Referrals by Dr. Michael Jones for Time Period January 1, 2008 Through February 28, 2014".[123] This proposed summary exhibit is a table providing the number of referrals and the percentage of total referrals by Defendant Michael Jones to various home health agencies during the time of the alleged conspiracy.

Defendant Michael Jones contends this proposed summary exhibit contains extrinsic evidence not admissible under Rule 404(b). In addition, Defendant Michael Jones argues that even if the evidence was otherwise admissible under Rule 404(b), he

---

[121] R. Doc. 793, at 2.

[122] The Court's ruling with respect to Bates No. 349727 will apply to similar proposed exhibits relating to other Defendants. For example, Bates No. 349726 with respect to Defendant Barnes.

[123] Bates No. 349727; *see also* R. Doc. 878-3.

did not receive timely and/or adequate notice of the Government's intent to introduce 404(b) evidence and therefore the Court should exclude any attempt by the Government to introduce the extrinsic evidence. The Government's deadline to inform defense counsel of its intent to introduce 404(b) evidence was September 19, 2016 at 5:00 p.m.[124]

The Government argues 404(b) does not apply because the chart in question is a summary of intrinsic data depicting the Defendant's referral pattern during the period of time covered by the Second Superseding Indictment.[125] According to the Government this evidence is intrinsic because "[i]t provides context for the jury to understand where Michael Jones was sending his beneficiaries for home health during the indictment period."[126] Further, the Government argues it provided notice during a pretrial hearing held on September 14, 2016 when it "specifically told Jones and the other defendants that it intended to introduce evidence that they and Abide moved patients from other home health agencies to Abide as part of the charged conspiracy."[127]

In *United States v. Davis*, a case in this district in which the defendants were also charged with healthcare fraud involving an illegal kickback scheme, the court faced a similar issue.[128] The *Davis* court, although "concerned that this trial, somewhat complex as it is, will be prolonged unnecessarily by exploration and discussion of other home health companies not at issue here," ultimately determined that evidence indicating "cross over" or "migration" of the specific beneficiaries discussed at trial between other home health companies ("HHCs") and Christian Home Health Care, the indicted home health care company, was intrinsic to the charges conspiracy.[129] The *Davis* court

---

[124] *See* R. Doc. 666.
[125] R. Doc. 878, at 6.
[126] *Id.*
[127] R. Doc. 885, at 1 (citing R. Doc. 689, at 57-58).
[128] *See United States v. Davis*, No. CR 15-155, 2016 WL 552484 (E.D. La. Feb. 12, 2016).
[129] *Id.* at *2

specifically found, "As to those beneficiaries, their handling is inextricably intertwined with evidence of the charged conspiracy, is part of the same alleged criminal episode, and the other acts (particularly for those beneficiaries who migrated to Christian) might even be a necessary preliminary step toward completing the charged offense."[130] The *Davis* court specifically held, however, "The Government is specifically prohibited from mentioning, or asking a witness to mention, any other conviction at this trial. Insofar as particular 'cross over beneficiaries' are concerned, i.e., beneficiaries who eventually would end up at Christian, the Government's evidence in this regard would be limited to" the patients the government specifically identified it would discuss at trial.[131]

The Court finds the reasoning in *Davis* to be persuasive. Information in Bates No. 349727 is intrinsic to the charged conspiracy because it is inextricably intertwined with evidence of the charged conspiracy and, as a result, 404(b) does not apply. Further, the information is relevant to complete the story of the crime and provides background information necessary for the jury to understand the structure of the alleged conspiracy, the transfers of patients during the existence of the alleged conspiracy, and the nature of the alleged conspiratorial relationship between Abide and the Defendants.[132] The Government may introduce Bates No. 349727 as a Rule 1006 summary exhibit. If Defendant Michael Jones testifies that a higher percentage of his patients were referred to a home health agency other than Abide, the Government will be allowed to cross-examine him with respect to his and his wife's financial relationships with the other agency or agencies to which he referred patients.

---

[130] *Id.* at *2 n.6.
[131] *Id.* at 2.
[132] *See, e.g., United States v. Washington*, 493 F. App'x 586, 587 (5th Cir. 2012).

f.   Abide Patient Transfers – Bates No. 358276

Defendant Michael Jones also objects to the Government's proposed summary exhibit, "Abide Patient Transfers to Dr. Jones."[133] This proposed summary exhibit depicts a web, with Defendant Michael Jones at the center, surrounded by individual patients transferred between various indicted and unindicted physicians until the patients ultimately were placed under the care of Defendant Michael Jones. Defendant Michael Jones argues this chart is not a proper Federal Rule of Evidence 1006 summary exhibit and, similar to the previously discussed summary exhibit, also contains impermissible, unnoticed 404(b) evidence.[134]

A court has "broad discretion under" Federal Rule of Evidence 1006 to admit summaries.[135] The Government argues this is a proper summary exhibit because it depicts the transfers of individual patients who ultimately ended up under Michael Jones' care. During oral argument on December 20, 2016, the Government argued this chart summarizes voluminous documents because, at each transfer, the applicable doctor signed a document authorizing the transfer of the patient and the patient's medical records. First, the Court finds the Government has not satisfied its burden to demonstrate this chart summarizes *voluminous data.* Each transfer depicted occurred after a physician authorized the transfer by signing a single sheet of paper. Second, for each of the individual patient transfers there is a differing explanation as to why that patient was ultimately transferred. This chart does not provide insight into the underlying purpose of each transfer but instead merely depicts the path each patient took before ultimately

---

[133] Bates No. 358276.

[134] As Defendant Michael Jones contends the exhibit contains impermissible and unnoticed 404(b) evidence, it is clear he also objects to the Government's use of Bates No. 358276 as a demonstrative during its case-in-chief.

[135] *See Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 314 (5th Cir. 2010); *see also Bishop*, 264 F.3d at 547 (explaining that Rule 1006 is "broadly interpreted").

being placed under the care of Defendant Michael Jones. The Court finds Bates No. 358276 is not admissible as a summary exhibit pursuant to Federal Rule of Evidence 1006 and is better analyzed as a Rule 611 demonstrative.

"[A]llowing the use of charts as 'pedagogical' devices intended to present *the government's version of the* case is within the bounds of the trial court's discretion to control the presentation of evidence under [Federal Rule of Evidence] 611(a)."[136] Charts introduced solely as pedagogical devices are not admitted into evidence, do not go into the jury room absent the consent of the parties, and "the court should instruct the jury that the chart or summary . . . [is] only an aid in evaluating evidence."[137] In addressing whether the Government may use Bates No. 358276 as a demonstrative aid during its case-in-chief, the Court must first decide whether the chart satisfies the Rule 403 balancing test. If the Court finds the chart passes the Rule 403 balancing test, the Court must then determine whether this chart, as Defendant Jones argues, contains impermissible extrinsic evidence and should be excluded under Rule 404(b).

In its current form, the Court finds the value of this proposed chart as a pedagogical aid is substantially outweighed by the risk of unfair prejudice and may mislead, rather than assist, the jury. The chart depicts Defendant Michael Jones as the center of the indicted conspiracy and the catalyst for the transfer of patients between the other physicians. In reality, and as the Government explained during oral argument on October 26, 2016, Abide was at the center of the conspiracy and was the entity that transferred patients from one physician to another. The Court need not determine whether the chart contains impermissibly unnoticed 404(b) evidence as the Court finds Bates No. 358276

---

[136] *United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009) (emphasis and alterations in original) (quoting *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006)).
[137] *Id.*

fails the Federal Rule of Evidence 403 balancing test. The Government will not be allowed to use Bates No. 358276 as a pedagogical aid in its current form. The risk of undue prejudice posed by Bates No. 358276 may be alleviated by reformatting the proposed chart in the format provided by the Court in Attachment 2. In the event the Government reduces the risk of prejudice by changing the format, as suggested, revised Bates No. 358276 may be used as a demonstrative pedagogical aid so long as it does not contain impermissible extrinsic evidence.

The Court finds the migration of the patients specifically identified in the Government's September 21, 2016 list of patients[138] is intrinsic to the charged conspiracy. The Government may use a reformatted Bates No. 358276 as a pedagogical aid, so long as the patients included were included in the Government's September 21, 2016 list. The Government may not elicit testimony regarding indictment or convictions of other doctors shown on the exhibit as such testimony is extrinsic to the charged conspiracy.[139]

## CONCLUSION

Accordingly;

**IT IS ORDERED** that the if Defendant Evans testifies, the Government may question him on cross-examination about the 1986 Disciplinary Investigation for the purpose of challenging his character for truthfulness. Pursuant to Rule 608(b), the Government is required to accept Defendant Evans' answers and may not impeach him

---

[138] The Government will introduce these patients' medical records at trial.
[139] The Court's holding with respect to Bates No. 358276 will also apply to the extent the Government has prepared similar proposed summary exhibits for other Defendants.

with extrinsic evidence. The Government, however, may not question Defendant Evans on cross-examination about the 2011 investigation.[140]

**IT IS FURTHER ORDERED** that Paula Jones' Objections to the Government's 1006 Charts[141] is **GRANTED IN PART** and **DENIED IN PART**. Pursuant to Rule 403 of the Federal Rules of Evidence, the Government may not introduce Bates No. 358279. The Government will be allowed to introduce Bates No. 358278. Pursuant to Rule 403 of the Federal Rules of Evidence, the Government may not introduce Bates No. 358277 in its current form, but may introduce a revised version of Bates No. 358277 as a summary exhibit so long as it does not include the sections of the table that aggregate the totals for each of the two time periods and does not state the difference in aggregate amount received between the two periods.[142] The Government may not introduce Bates No. 351520 as it is not a Rule 1006 Summary Exhibit and is cumulative of evidence found in other exhibits.

**IT IS FURTHER ORDERED** that Michael Jones' Motion in Objection to the Government's Summary Evidence[143] is **GRANTED IN PART** and **DENIED IN PART**. The Government may introduce Bates No. 349727 as a summary exhibit because it is intrinsic to the charged conspiracy. If Defendant Michael Jones testifies that a higher percentage of his patients were referred to a home health agency other than Abide, the Government will be allowed to cross-examine him with respect to his or his wife's financial relationships with the other agency or agencies to which he referred patients. The Government may use a reformatted[144] Bates No. 358276 as a pedagogical aid

---

[140] *But see supra* note 94.
[141] R. Doc. 793.
[142] *See* Attachment 1.
[143] R. Doc. 795,
[144] *See* Attachment 2.

pursuant to Federal Rule of Evidence 611(a) so long as the patient migrations discussed are associated with patients specifically identified in the Government's September 21, 2016 list of patients.

**New Orleans, Louisiana, this 7th day of February, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**